S. F. McCOTTER & SON, INC. v. O.H.A. INDUSTRIES, INC.

No. 813SC190

(Filed 6 October 1981)

1. **Principal and Agent § 4.2— proof of agency—extrajudicial statements of agent**

   Out-of-court statements of an alleged agent are inadmissible to prove the position of the agent or that he was acting within the scope of his authority, and the trial court therefore properly excluded plaintiff's testimony that defendant's employee told him that he was defendant's general manager and had authority to enter into an agreement for defendant to resell a grain dryer plaintiff had purchased from defendant.

2. **Principal and Agent §§ 4.2, 5.2— scope of authority—declaration by agent—authority of sales agent**

   Evidence that defendant's agent listed his title as general manager when he signed a supplier's agreement for sale of a grain dryer to plaintiff constituted a mere declaration by the agent which was incompetent to show his position and authority, and plaintiff's evidence was therefore insufficient to show that the agent was anything other than a sales agent who had authority to make the original sales agreement but had no apparent authority to bind defendant to an agreement to resell the grain dryer and to give plaintiff the option of a return of his purchase price or application of the proceeds to a larger grain dryer.

APPEAL by plaintiff from *Peel, Judge.* Judgment entered 16 December 1980 in Superior Court, PAMLICO County. Heard in the Court of Appeals 22 September 1981.

Plaintiff initiated an action against defendant for breach of an oral contract made by its alleged agent Bartels. The court granted defendant's motion for a directed verdict at the close of plaintiff's evidence.

Plaintiff first met Lewis Bartels at a promotional meeting for O.H.A. Industries, American Grain Dryers. On 26 February 1975, plaintiff purchased an automated grain dryer from O.H.A. Industries. Bartels signed the purchase order. Approximately one month later, the grain dryer was shipped to plaintiff in a freight truck containing other O.H.A. dryers. By that time, the equipment needs of plaintiff had changed. Plaintiff alleges that defendant, through its agent Bartels, negotiated a new contract in April of 1975, whereby defendant agreed to pick up the grain dryer and resell it. Upon resale, defendant would return to plaintiff the dryer's purchase price or apply it toward the purchase of another grain dryer at plaintiff's option. In September or October of 1977, the machine was removed. Plaintiff later demanded return of his purchase price which defendant failed to pay.

*Mayo and Swindell, by Hiram J. Mayo, Jr., for plaintiff appellant.*

*Ward and Smith, by Thomas E. Harris, for defendant appellee.*

VAUGHN, Judge.

Plaintiff assigns as error the order entered granting a directed verdict in defendant's favor. Plaintiff argues that the judge improperly excluded testimony which would have established that Bartels was an agent of the defendant with apparent authority to bind defendant to terms of a new oral contract. We disagree and therefore affirm the court's order.

There are two contracts involved in the present cause. The first contract is the original purchase agreement of the automated grain dryer. It is admitted in defendant's answer that on or about 26 Feburary 1975, plaintiff purchased from defendant an automated grain dryer for the price of $8,000.00. Since the only contact defendant had with plaintiff was through Bartels, defendant's admission to the purchase agreement constitutes an admission of Bartels' agency. Admissions contained in a pleading are conclusive against the pleader. Therefore, defendant was estopped at trial from denying that Bartels was acting as its agent under the original purchase agreement.

Defendant has not admitted the existence of the alleged second contract. This "contract" is in effect a repurchase agreement

with different terms from the original sales contract. At trial, plaintiff attempted to admit into evidence its terms and to impose liability on defendant as principal for breach of the contract made by its agent. Before the contract can be admitted into evidence, however, plaintiff must prove not only the existence of Bartels' agency but also the authority of Bartels to bind defendant by such a contract. *Albertson v. Jones*, 42 N.C. App. 716, 257 S.E. 2d 656 (1979). It is this latter element which is lacking in plaintiff's evidence.

Plaintiff contends that Bartels had apparent authority to bind defendant to a new agreement. Apparent authority is defined as that authority which the principal has held its agent out as possessing and upon which a third party reasonably relies. *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 31, 209 S.E. 2d 795, 799 (1974). Plaintiff argues that defendant employed Bartels as general manager and thereby endowed him with powers greater than those of a sales agent.

[1] At trial, plaintiff attempted to prove that Bartels was a general manager by statements made by Bartels to plaintiff and by a supplier's agreement. Out-of-court statements of an alleged agent are inadmissible to prove an agency relationship. *Commercial Solvents v. Johnson*, 235 N.C. 237, 69 S.E. 2d 716 (1952). They are likewise inadmissible to prove the position of the agent or that he was acting within the scope of his authority. *D.L.H., Inc. v. Mack Trucks, Inc.*, 3 N.C. App. 290, 164 S.E. 2d 532 (1968). The court, therefore, properly excluded plaintiff's testimony that Bartels told him he was defendant's general manager and had authority to enter into an agreement to resell.

[2] Plaintiff argues the supplier's agreement is extrinsic evidence that Bartels was a general manager. Bartels is the only signer of the agreement, and it is he who listed his title as general manager. Although a witness testified that the supplier's agreement was mailed to defendant's office in Georgia, the witness was unsure whether Bartels brought the agreement back or if it was returned by mail. One cannot conclude, therefore, that defendant saw Bartels' signature as general manager and ratified his representations by returning the agreement without change. Without evidence to that effect, the supplier's agreement is simply another declaration by the agent. We also note that nowhere in

plaintiff's testimony does he suggest he relied on this agreement in concluding Bartels was general manager. In fact, his testimony indicates otherwise:

"Q. Now, at the time in April of 1977 — of 1975 when you talked with Mr. Bartels, did you know his title with the company?

Objection.

Sustained.

A. Only what he told me. I mean he didn't walk in my office and present me a legal document telling me what he was. He just told me — He didn't say he was Vice President or General Manager or anything. He said he represented O.H.A. . . . ."

We conclude that plaintiff has presented no evidence establishing Bartels as anything other than a sales agent of defendant. As a sales agent, he had authority to make the original sales contract. Unless otherwise agreed, however, the authority to sell does not include the authority to rescind or modify terms of the sale after its completion. Restatement (Second) of Agency § 66 (1958). Bartels, therefore, had no authority to enter into a completely new agreement with plaintiff which, without consideration, placed an obligation on defendant to sell the grain dryer and gave plaintiff the option of a return of his purchase price or application of the proceeds to a larger grain dryer.

By relying on the authority of a sales agent to negotiate a new contract after the completed transaction, plaintiff acted at his own risk, especially here where the sales agreement was written and the alleged new contract was oral. In the absence of evidence that defendant had knowledge of and acquiesced to the terms of this later unauthorized contract with plaintiff, defendant was entitled to a directed verdict.

Affirmed.

Judges ARNOLD and WEBB concur.